UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

AUDRAIN JONES,

        Plaintiff,

           v.                        CAUSE NO. 3:21-CV-816-JD-MGG

JOHN GALIPEAU, et al.,

        Defendants.

## OPINION AND ORDER

Audrain Jones, a prisoner without a lawyer housed at the Westville Correctional Facility, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Jones reports that he is suffering from symptoms of Coronavirus Disease 2019 (COVID-19), including fever, diarrhea, shortness of breath, chest pain, a sore throat, and loss of smell and taste. ECF 1 at 2, 8. He has submitted multiple health care requests indicating that he thinks he has COVID-19. In response, he has been seen by nursing staff multiple times. During these meetings, Jones has demanded that he be tested for COVID-19, but the nursing staff will not administer a test. He further claims that no

prisoners are being tested for COVID-19, even when symptomatic, so that positive COVID-19 cases will not need to be reported and the prison's COVID-19 problem can be ignored.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted).

Here, Warden Galipeau or Commissioner Robert E. Carter were not personally involved in providing Jones with medical care. Defendants cannot be held individually liable based solely on their supervisory position over others or their status as an employer. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. He can only sue those employees who are directly involved in denying him medical care.

In addition to his concerns regarding his own medical condition, Jones believes that the COVID-19 pandemic has been managed in a way that is deliberately indifferent to his safety. Jones believes that there is currently a COVID-19 outbreak at the prison (although he offers no factual basis for this belief), and it is being ignored. As noted previously, he claims that prisoners are no longer being tested for COVID-19, even when symptomatic.[1] The prison only checks temperatures of staff as a screening measure, but Jones wants all prison staff to undergo regular COVID-19 tests. He believes that prison staff who are not tested pose an unacceptable risk to him when they interact with him, including subjecting him to pat searches whenever he leaves his cell.

---

[1] At this stage of the proceedings, the court must accept the allegations in the complaint as true. However, the court notes that this allegation is inconsistent with published data regarding COVID-19 cases at Indiana prisons, which show that 1076 COVID-19 tests have been performed on inmates, and one inmate at Westville is currently positive for COVID-19. IDOC: IDOC Facility COVID-19 Data (in.gov) (last visited Oct. 27, 2021).

In addition, Jones notes that the requirement that staff wear masks when within six feet of an inmate is not always enforced. Jones further alleges that adequate medical personnel has not been hired to address the additional needs imposed by the pandemic.

Deliberate indifference imposes a "high hurdle," for it requires a showing "approaching total unconcern for the prisoner's welfare." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). Neither negligence nor gross negligence is enough. *Id.* "[T]he mere failure . . . to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). Here, the complaint establishes that the prison is taking steps to protect inmates from COVID-19: staff are instructed to wear masks when within six feet of inmates, and temperatures of staff are checked to screen for COVID-19. "That a response did not avert the risk does not mean it was unreasonable, and the standard is always reasonableness in light of the surrounding circumstances." *Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018); *see also Money v. Pritzker*, 453 F. Supp. 3d 1103, 1131-32 (N.D. Ill. 2020) (denying inmates' preliminary injunction motion because defendants listed steps they were taking in response to COVID-19 and "[t]he record simply does not support any suggestion that Defendants have turned the kind of blind eye and deaf ear to a known problem that would indicate total unconcern for the inmates' welfare" (quotation marks omitted)); *Coates v. Arndt*, No. 20-C-1344, 2020 WL 6801884, at *2 (E.D. Wisc. Nov. 18, 2020) ("The plain fact is that the country is experiencing a pandemic and cases of COVID-19 are breaking out in prisons and communities across the country. This does not mean that the correctional officers in charge of those prisons are subjecting inmates to cruel and

unusual punishment. People, both inside and outside prisons and jails, are contacting COVID-19 . . ..”). Individual failings on the part of some staff members to abide by prison policies do not reflect deliberate indifference on the part of Warden Galipeau or Commissioner Carter. *See Burks*, 555 F.3d at 594 (noting there is no general supervisory liability under § 1983). It cannot be plausibly inferred from Jones's allegations that the defendants are deliberately indifferent to the risk to inmate safety posed by COVID-19.

Jones also alleges that, pursuant to the prison's policies, he should receive one free visit with family each week on a G.T.L. Kiosk, but he has not received visits because there are insufficient staff and kiosks. He does not allege that either Warden Galipeau or Commissioner Carter are personally involved in denying him visitation. *Burks*, 555 F.3d at 596 (“[P]ublic employees are responsible for their own misdeeds but not for anyone else's.”). Additionally, a violation of a prison policy does not amount to a constitutional violation. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)(“However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.”). That said, prisoners do retain “a limited constitutional right to intimate association,” and prison officials may violate the Constitution by “permanently or arbitrarily denying an inmate visits with family members” without balancing the prisoner's interests against legitimate penological objectives. *Easterling v. Thurmer*, 880 F.3d 319, 322–23 (7th Cir. 2018) (citing *Overton v. Bazzetta*, 539 U.S. 126 (2003); *Turner v. Safley*, 482 U.S. 78 (1987)). Here, Jones does not say how long he has been denied video visitations or whether he is able to communicate with family by other means, including letters or telephone. His

allegations are too vague to state a claim. It is also unclear how these assertions are related to Jones's allegations stemming from a failure to test for COVID-19 and enforce prison rules regarding wearing masks. "Unrelated claims against different defendants belong in different suits . . .." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). *See also Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017).

Because Jones's complaint does not state a claim, his requests for preliminary injunctive relief must be denied. However, one request requires further discussion. Jones asks to be released from prison and placed on electronic monitoring. To the extent that Jones is seeking his release from prison, that relief is not available to him in an action brought pursuant to 42 U.S.C. § 1983. *See Heck v. Humphrey*, 512 U.S. 477, 481 (1994). While this court expresses no opinion on whether Jones should file a habeas petition, to the extent he is seeking relief only available through a habeas petition, he needs to file a habeas petition in a separate case. He may also consider filing a request for compassionate release with the court where he was convicted of his criminal charges, but again this court expresses no opinion on whether he should do so.

This complaint does not state a claim for which relief can be granted. Nevertheless, Jones may file an amended complaint if he believes he can state a claim based on (and consistent with) the events described in this complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). Additionally, Jones did not use the court's approved prisoner complaint form, as required by Northern District of Indiana Local

Rule 8-1. To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. After he properly completes that form addressing the issues raised in this order, he needs to send it to the court. Finally, if Jones files an amended complaint, he is cautioned that he may not sue different defendants based on unrelated events.

For these reasons, the court:

(1) GRANTS Audrain Jones until **November 30, 2021**, to file an amended complaint; and

(2) CAUTIONS Audrain Jones if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on November 1, 2021

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT